IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SERGEANT PAMELA P. MERCER )
)
      Plaintiff, )
)
    v. ) No. 12 C 7272
)
THOMAS DART, Sheriff of Cook County,)
Illinois, COOK COUNTY, a body politic )
)
      Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment and motions to strike. For the reasons stated below, the motion for summary judgment is granted in its entirety and the motions to strike are denied.

## BACKGROUND

Plaintiff Pamela P. Mercer (Mercer) is employed at the Cook County Sheriff's Office (Sheriff's Office) where she has continually worked since 1988. Mercer is assigned to the Cook County Department of Corrections where she serves as a correctional sergeant in the Pre-Release Center (PRC). Mercer previously filed a federal employment discrimination lawsuit against the Sheriff's Office in 2009 (Prior Lawsuit). *See Mercer v. Cook Cnty., Ill. et. al*, WL 1044549 (N.D. Ill.

1

2012)(granting defendants' motion for summary judgment on all counts); *Mercer v. Cook Cnty., Ill.*, 527 F. App'x 515, 517 (7th Cir. 2013). Mercer alleges that after she filed the Prior Lawsuit, Cook County Sheriff Commander Edward Byrne (Commander Byrne), Cook County Sheriff Lieutenant Jerry Camel (Lt. Camel), and other Sheriff's Office employees retaliated against her. Mercer also alleges that the same individuals subjected her to discrimination and harassment based upon her race and sex. Mercer argues that Defendant Cook County Sheriff Thomas Dart (Sheriff) and Defendant Cook County (County), as his indemnifier, are liable for the discrimination, harassment, and retaliation she claims she endured from 2009 through 2011.

Mercer includes in her complaint a claim alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* (Count I), Title VII claims alleging sexual discrimination and harassment, (Count II), a Title VII claim alleging unlawful retaliation (Count III), and indemnification claim pursuant to 745 ILCS § 10/9-102 (Count IV). Defendants move for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A

"genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Local Rule 56.1

Mercer and Defendants have each filed a Local Rule 56.1 statement of material facts. Defendants have moved to strike Mercer's responses to several paragraphs of Defendants' statement of material facts. Defendants have also moved to strike paragraphs two through fifty of Mercer's statement of additional material facts since they are based upon an affidavit from Mercer that is attached. In both motions, Defendants argue that Mercer's filings are not in compliance with Local Rule 56.1.

In Mercer's response to Defendants' statement of material facts, Mercer admits that the majority of facts are undisputed. (R SF Par. 1-15, 17-19, 21-23, 25,

3

28-33, 35-36, 40-50, 53, 55-56, 58-60, 62, 65-67, 69-73, 75-76, 78-80). In Mercer's statement of additional material facts, Mercer relies almost exclusively on her own affidavit to support all of her proposed facts. The court has thoroughly reviewed Mercer's statement of additional material facts and her affidavit and will consider such documents to the extent they are based upon evidence in the record and not mere speculation or hearsay. Accordingly, Defendants' motion to strike Mercer's responses and Defendants' motion to strike Mercer's statement of material facts are denied.

II. Title VII Discrimination Claims

Defendants argue that Mercer has not pointed to sufficient evidence to prevail on either of her Title VII discrimination claims. A plaintiff bringing a Title VII discrimination claim can defeat a defendant's motion for summary judgment under the direct or indirect methods of proof. *Naficy v. Illinois Dept. of Human Services*, 697 F.3d 504, 509-10 (7th Cir. 2012).

A. Direct Method of Proof

Mercer argues that she has pointed to sufficient evidence to proceed on both of her Title VII discrimination claims under the direct method of proof. Under the direct method of proof, a plaintiff must "present 'direct or circumstantial evidence that creates a convincing mosaic of discrimination on the basis of'" the protected characteristic. *Good v. University of Chicago Medical Center*, 673 F.3d 670, 674-75

4

(7th Cir. 2012)(quoting *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009)); *see also Naficy*, 697 F.3d at 509-10 (explaining that under the "'direct method,' a plaintiff must marshal sufficient evidence, either direct or circumstantial, that an adverse employment action was motivated by discriminatory animus," and that "[c]ircumstantial evidence may be sufficient to make out a direct claim of discrimination when the plaintiff presents enough evidence to allow a reasonable factfinder to conclude that the adverse employment action was taken as a result of the plaintiff's" protected characteristic). Mercer contends she was discriminated against when she was: (1) denied work assignments, (2) required to turn in her work equipment, and (3) disciplined. (Ans. SJ 1-10).

    1. Work Assignments

Mercer contends she was discriminated against when she was denied a shift commander assignment in favor of a white sergeant. Mercer specifically alleges that Sergeant Wright, a white male, once had a union grievance overturned that allowed him to be assigned as a shift commander instead of her. (Ans. SJ 1-10); (Mercer Aff. Par. 37). Mercer, however, admits that, apart from her own assumptions, she does "not know" what Sergeant Wright's grievance was actually based on or who ultimately made the decision to overturn it. (Mercer Dep. 155-58); (Mercer Aff. Par. 37). Mercer also admits that she has been assigned as a shift commander in the past and acknowledges that her allegation in this regard is actually a collective bargaining agreement (CBA) issue and not discriminatory. (R SF Par. 66); (Mercer Dep. 156).

Mercer also claims that in July of 2011, Lt. Camel, a black male, once ordered her to provide lunch relief for four hours to officers assigned to her building when there was a staff shortage. (Mercer Dep. 145-50). Mercer indicates that since she was covering lunch duty that day, she could not perform her normal sergeant assignments and therefore was subjected to discrimination. (Ans. SJ 1-10); (Mercer Dep. 145-50). Mercer, however, admits that as a sergeant she was required to relieve officers assigned to her building for lunch relief. (R SF Par. 59-60). Mercer also acknowledges that her lunch relief allegation is also a CBA issue. (Mercer Dep. 146-47); (R SF Par. 59-60).

Mercer also contends that she is regularly short-paid overtime compensation and that she has to contact the payroll office to correct her pay. Mercer, in this regard, alleges nothing more than a clerical error on the part of the payroll department. The court also notes that Mercer has failed to submit any documentation explaining how her overtime is even accrued or calculated. Accordingly, Mercer has failed to point to any direct evidence that she was discriminated against based upon any of the work assignments she has pointed to.

2. Work Equipment

Mercer contends that Lt. Camel repeatedly, and without any justification, yelled at her for not turning in her keys and radio equipment by 6:30 a.m. each shift. (Ans. SJ 1-10). Mercer, however, admits that Lt. Camel issued a memorandum that required all sergeants on her shift to turn in their equipment by 6:30 a.m. (Mercer

Dep. 68-70, 82-86, 137); (Def. Ex. C 8). Mercer also admits that at times she did not follow Lt. Camel's memorandum and turned her keys in after 6:30 a.m. (Mercer Dep. 68-70, 82-86, 137); (Def. Ex. C 8).

Mercer also contends that on January 16, 2011, Lt. Camel followed her into a small room with his phone in his hand and yelled at her as she sat in a chair. (Ans. SJ 1-10). Mercer claims Lt. Camel would not let her leave while he was yelling and was sexually discriminating against her because allegedly a certain body part area of Lt. Camel was near her face at the time he was yelling at her. (Ans. SJ 8). Mercer, however, admits that on that occasion Lt. Camel did not touch her, made no comments of a sexual nature towards her, and was only yelling at her about turning in her keys on time. (Mercer Dep. 135-37). Mercer also admits that her working relationship with Lt. Camel "has improved a lot" and now "[Lt.] Camel comes to the office and we talk about things that are happening." (Mercer Dep. 66). Accordingly, Mercer has failed to point to any direct evidence that she was discriminated against based upon the requirement to turn in her work equipment at a certain time.

### 3. Discipline

Mercer alleges she was occasionally disciplined and therefore discriminated against. Mercer alleges that Commander Byrne, a white male, filed an unnecessary complaint with the Office of Professional Review (OPR) against her after she submitted a written memorandum to Commander Byrne alleging that she had been "intentionally bumped into" by a white male officer named Officer Iacovetti on April

7

28, 2011. (Ans. SJ 1-10); (SAF Par. 14-18). Mercer, however, admits that after she submitted the memorandum to Commander Byrne, she then refused to initiate any disciplinary action against Officer Iacovetti. (R SF Par. 30-31). Mercer also admits that Commander Byrne did file an OPR complaint against Officer Iacovetti regarding the April 28, 2011 incident as well. (R SF Par. 32).

Mercer also contends that Commander Byrne once filed an OPR complaint against her for the way she performed her duties as a sergeant on July 21, 2011. (SAF Par. 6-12). Mercer, however, admits that on that day she ordered both inmates and correctional officers to disregard Commander Byrne's direct orders. (R SF Par. 21-23, 25). Mercer further alleges that she has been disciplined and issued written reprimands by Commander Byrne and others on his behalf for a "a telephone call from an earlier case" and "radio traffic by a subordinate." (Mercer Aff. 22); (Mercer Dep. 86-87, 162-71). Mercer admits, though, that she cannot recall the exact dates, basis, or outcome of the alleged written reprimands. (Mercer Dep. 86-87, 162-71); (R SF 75).

Mercer also contends that she was prevented from disciplining officers and that OPR refused to investigate the complaints she filed. Mercer, however, admits that she does not usually write up disciplinary reports on officers in the PRC unit and further admits that OPR has actually investigated sixteen of her complaints, two of which are still open investigations. (Mercer Dep. 165-67); (R SF Par. 44, 67). Mercer also admits that she does not know how OPR conducts its investigations. (R SF Par. 35-36). Accordingly, Mercer has failed to point to any direct evidence that

she was discriminated against based upon any of the disciplinary procedures at the Sheriff's Office.

Mercer's unsubstantiated allegations, even if true, fail to create a convincing mosaic of discrimination. There is no evidence that the isolated incidents that she has pointed to occurred to her because she was African-American or female. Based on the above, Mercer has failed to point to sufficient evidence, even when viewed in its totality, to proceed under the direct method of proof.

### B. Indirect Method of Proof

Mercer argues that she has pointed to sufficient evidence to proceed on her Title VII discrimination claims under the indirect method of proof. Under the indirect method of proof, a plaintiff must first establish a *prima facie* case by showing: (1) that the plaintiff "is a member of the protected class," (2) that the plaintiff "met her employer's legitimate job expectations," (3) that the plaintiff "suffered an adverse employment action," and (4) that "similarly situated employees outside of the protected class were treated more favorably." *Naficy*, 697 F.3d at 511-12. If the plaintiff establishes a *prima facie case*, "the burden shifts to" the defendant "to introduce a legitimate, nondiscriminatory reason for the employment action." *Id.* If the employer introduces such a reason, the burden shifts back to the plaintiff to show that the reason is a pretext for unlawful discrimination. *Id.*

Defendants argue that Mercer cannot proceed under the indirect method since she has not shown that she suffered an adverse employment action or that similarly situated employees outside of the protected class were treated more favorably.

1. Adverse Employment Action

Defendants argue that Mercer has not pointed to sufficient evidence to show that she suffered an adverse employment action. An employer's action "must materially alter the terms and conditions of employment" to constitute an adverse employment action within the meaning of Title VII. *See Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012)(quoting *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001)(internal quotations omitted)(stating "[a] materially adverse employment action is more than a mere inconvenience or an alteration of job responsibilities"). For Title VII purposes, the Seventh Circuit has recognized three categories of adverse employment actions: "(1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative

alteration in her workplace environment." *Dass*, 675 F.3d at 1069.

Pursuant to the parties' Local Rule 56.1 statement of material facts, it is undisputed that the terms and conditions of Mercer's employment have not been materially altered. (R SF Par. 6, 73). Mercer admits that she has never been terminated by the Sheriff's Office and that she continues to serve as a sergeant, a rank she has continually held for the last twenty-one years. (R SF Par. 6, 73). Mercer, nonetheless, argues that she may "subsequently" suffer a material adverse action because of a few disciplinary filings. (Ans. SJ 9). The disciplinary filings against Mercer have not resulted in any tangible or immediate job consequences to her since it is undisputed that she has never been suspended or demoted by the Sheriff's Office. *See Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 648-49 (7th Cir. 2005)(holding that actionable adverse employment actions result in an employee experiencing "tangible" and "immediate job consequences"). Such disciplinary filings are, in any event, not even considered adverse employment actions. *See id.* at 647-48 (quoting *Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001))(holding "that neither unfavorable performance evaluations nor oral or written reprimands constitute adverse employment actions under our case law")(internal quotations omitted). Mercer therefore has failed to point to any material alterations in her job duties. Thus, Mercer has failed to establish that she suffered an adverse employment action.

### 2. Similarly-Situated Employees

Defendants argue that Mercer has failed to point to similarly situated employees outside the protected class that were treated more favorably. Employees are considered "similarly situated if they are directly comparable . . . in all material respects." *See Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 551 (7th Cir. 2011)(internal quotations omitted)(quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Establishing that an employee is similarly situated, "entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (internal quotations omitted)(quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)). Mercer has failed to sufficiently identify any officers outside the protected class that served as sergeants that received more favorable treatment than her. The court also notes that in Mercer's response to Defendants' motion for summary judgment, Mercer does not address the issue of similarly situated employees with respect to her Title VII discrimination claims. (Ans. SJ 7-10). Thus, Mercer has failed to point to similarly situated employees outside the protected class that were treated more favorably. Based on the above, Mercer has failed to establish a *prima facie* case under the indirect method of proof.

3. Pretext

Defendants contend that even if Mercer could establish a *prima facie* case, her Title VII discrimination claims fail because the actions she points to were all based on legitimate, nondiscriminatory reasons. (Ans. SJ 8). For example, Mercer's allegations with regard to her assignments are isolated incidents that, by Mercer's own admission, concern CBA issues. (R SF 66); (Mercer Dep. 156). Mercer's allegation towards her overtime pay concerns payroll errors and makes no mention of racial or sexual discrimination. Additionally, Lt. Camel's memorandum that required equipment to be turned in at 6:30 a.m. was legitimate since it was issued to ensure that the equipment was accounted for and available for the next shift that started at 7:00 a.m. (Mercer Dep. 68-69, 77, 80-83); (SJ Ex. C. 8,9). Further, Lt. Camel's memorandum was also not discriminatory since all of the other sergeants on her shift were also required to turn in their equipment by 6:30 a.m. (Mercer Dep. 68-69, 82-83); (SJ Ex. C. 8).

With regard to Mercer's discipline allegations, it is undisputed that Mercer did not "respect" Commander Byrne. (R SF Par. 28); (Mercer Dep. 50). Mercer has admitted that she has disregarded Commander Byrne's direct orders, failed to follow protocol of supervisors, and failed to write proper disciplinary reports on officers she witnessed committing ethical violations. (R SF Par. 21-23, 25, 67); (Mercer Dep. 68-69, 77, 80-83, 99). Further, the disciplinary filings against Mercer, which did not result in her suspension or demotion, were not discriminatory and completely legitimate under the circumstances. Further, contrary to Mercer's allegation, no direct evidence exists that Mercer has been prevented from disciplining officers as

13

evidenced by Mercer's deposition and the undisputed fact that OPR has and is continuing to investigate the OPR complaints she has filed. (Mercer Dep. 165-67); (R SF 44, 67). Mercer has also failed to sufficiently point to any evidence of discriminatory animus based on her race or sex.

Based upon the parties' Local Rule 56.1 statement of material facts and Mercer's deposition, Mercer has failed to show that the any of the actions alleged were a pretext for unlawful discrimination. Therefore, Defendants' motion for summary judgment on the Title VII discrimination claims is granted.

III. Title VII Hostile Work Environment Claim

Defendants argue that Mercer has failed to point to sufficient evidence to show that she was subjected to a hostile work environment. For a Title VII hostile work environment claim, a plaintiff must establish: "(1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based on her [race and sex]; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Vance v. Ball State University*, 646 F.3d 461, 469 (7th Cir. 2011). In determining whether sufficient evidence exists to support a hostile work environment claim, courts "consider the totality of the circumstances, including the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Porter v. City of Chicago*, 700 F.3d 944, 955-56 (7th Cir. 2012)(internal quotations omitted).

In support of her hostile work environment claim, Mercer adopts the same exact allegations set forth in her discrimination claims. Specifically, Mercer contends that she was harassed when she was: (1) denied work assignments, (2) required to turn in her work equipment, and (3) disciplined. (Ans SJ 3-10).

The incidents alleged by Mercer are neither objectively nor subjectively offensive enough to establish a hostile work environment. *Porter*, 700 F.3d at 955-56. Mercer's allegations that her work assignments were unfavorable consist of isolated instances that concern CBA issues, not Mercer's sex or race. (R SF Par. 66); (Mercer Dep. 156). Mercer's allegation that she was underpaid for overtime concerns payroll errors, not racial or sexual harassment. It is also undisputed that Lt. Camel's equipment memorandum was issued to all sergeants, regardless of their race or sex. (Mercer Dep. 68-69, 77, 80-83); (SJ Ex. C. 8,9). Further, there is nothing in the record to suggest that when Lt. Camel yelled at Mercer on January 16, 2011, he harassed her in a racial or sexual context. On the contrary, Mercer admitted that on that occasion Lt. Camel did not touch her, made no comments of a sexual nature towards her, and was only yelling at her about turning in her keys on time. (Mercer Dep. 135-37). Mercer also admits that her working relationship with Lt. Camel "has improved a lot" and now "[Lt.] Camel comes to the office and we talk about things that are happening." (Mercer Dep. 66).

Mercer's allegation that she was subjected to discipline also fails to establish a hostile work environment under the totality of the circumstances. Specifically, Mercer openly admits that she does not "respect" Commander Byrne and further

admits that she has disregarded his orders in the past. (R SF Par. 21-23, 25, 67; Mercer Dep. 68-69, 77, 80-83, 99). Mercer also admits that she has failed to follow the protocol of her supervisors and has failed to write discipline reports when appropriate. (R SF Par. 21-23, 25, 67); (Mercer Dep. 68-69, 77, 80-83, 99). The few infrequent disciplinary reports filed against Mercer did not involve her race or sex and, based upon the circumstances, appear justified. Mercer's own testimony and admissions strongly suggest that she was disciplined based upon her behavior and her lack of respect for authority rather than her race or sex. (R SF Par. 21-23, 25, 67); (Mercer Dep. 68-69, 77, 80-83, 99). Further, such discipline was not severe since it is undisputed that Mercer has never been suspended, demoted, or fired from the Sheriff's Office. (R SF Par. 6, 73). Mercer has also failed to show that she has been prevented from disciplining officers because of her race or her sex since it is undisputed that OPR has investigated and continues to investigate the OPR complaints she filed. (R SF Par. 21-23, 25, 67); (Mercer Dep. 68-69, 77, 80-83, 99).

Mercer's harassment allegations, even if true, fall far short of indicating the type of objectively pervasive hostile work environment that would interfere with a reasonable person's ability to do her job. *Porter*, 700 F.3d at 955-56. In addition, Mercer has not shown that any of the above-mentioned actions and decisions related in any way to the fact that she is a woman or African-American. Even when all of the harassment allegations are considered together, they still do not rise to the level of a hostile work environment. Therefore, based on the above, Defendants' motion for summary judgment on the hostile work environment claim is granted.

## IV. Title VII Retaliation Claim

Defendants argue that Mercer has not pointed to sufficient evidence to prevail on her Title VII retaliation claim. A plaintiff bringing a Title VII retaliation claim can defeat a defendant's motion for summary judgment under the direct or indirect methods of proof. *Hoppe v. Lewis University*, 692 F.3d 833, 841 (7th Cir. 2012).

### A. Direct Method of Proof

Mercer argues that she has pointed to sufficient evidence to proceed on her Title VII retaliation claim under the direct method of proof. (Ans. 10). Under the direct method of proof, a plaintiff must show: (1) that "'she engaged in a statutorily protected activity,'" (2) that "'she suffered a materially adverse action by her employer,'" and (3) that "'there was a causal link between the two.'" *Id.* (quoting *Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 664 (7th Cir. 2011))(internal quotations omitted). Mercer alleges that as a result of filing her Prior Lawsuit, she was retaliated against. (Ans. SJ 10). Mercer claims she was retaliated against when she was (1) denied work assignments, (2) required to turn in her work equipment, and (3) disciplined. (R SF 1-10).

Mercer has not pointed to direct or circumstantial evidence of retaliation. Even if Mercer did suffer an adverse action as she contends, Mercer cannot show a causal link between her Prior Lawsuit and any adverse action on the part of the Sheriff's Office. Mercer, citing to *Davis v. Time Warner Cable of Se. Wis., L.P.*,

17

651 F.3d 664, 675 (7th Cir. 2011), nonetheless argues that this court should infer causality since her Prior Lawsuit was filed in 2009 and the alleged retaliation in this case took place while the Prior Lawsuit was pending. (Ans. SJ 10). In *Davis*, however, the Seventh Circuit "underscored the importance of context in assessing whether an inference of causality is warranted or not." *See id*. (internal quotations omitted)(concluding "[t]he context here does not justify such an inference"). As in *Davis*, the context in this case does not justify an inference that Mercer's Prior Lawsuit caused the Sheriff's Office to retaliate against her. *Id*. Mercer has failed to point to one specific circumstance that would link her Prior Lawsuit to a subsequent adverse action. Mercer has instead speculated, pointed to what she describes as the "rumor mill," and stated that she "can't remember" what she heard others say about her prior lawsuit. (Mercer Dep. 118-22). Such conjecture is insufficient to support causation in a Title VII retaliation claim. *Davis*, 651 F.3d at 675 (7th Cir. 2011). Based on the above, Mercer has failed to point to sufficient evidence, even when viewed in its totality, to proceed under the direct method of proof.

    B. Indirect Method of Proof

Although Mercer does not argue that she can proceed on her Title VII retaliation claim under the indirect method of proof, Mercer would not be able to meet the burden in any event. Under the indirect method of proof, a plaintiff must first establish a *prima facie* case by showing: (1) that "[s]he engaged in a statutorily protected activity," (2) that "[s]he met his employer's legitimate expectations, i.e., he

18

was performing his job satisfactorily," (3) that "[s]he suffered a materially adverse action," and (4) that "[s]he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012). If the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to articulate a non-discriminatory reason for" the adverse action. *Id.* If the defendant provides such a reason, "the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the defendant's proffered reason was pretextual." *Id.*

Mercer has failed to sufficiently point to similarly situated employees that were treated more favorably than her in her retaliation claim. Based upon the parties' Local Rule 56.1 statement of material facts and Mercer's deposition, Mercer has also failed to show that any of the actions alleged were a pretext for retaliation. Therefore, Defendants' motion for summary judgment on the Title VII retaliation claim is granted.

V. Indemnification Claim

The County argues it is entitled to summary judgment on the indemnification claim since it is only a proper party as an indemnitor under Illinois law. (SJ 16). In Mercer's response, Mercer has conceded Defendants' motion for summary judgment as to the indemnification claim. (Ans. SJ 10-11). Specifically, Mercer concedes that the County is only a proper party as indemnitor to the Sheriff. Since there is no

19

liability as to the Sheriff, no liability can be attached to the County.  Therefore, Defendant's motion for summary judgment on the indemnification claim is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment is granted in its entirety and the motions to strike are denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   June 24, 2014